UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA   : | |
| | |
| v.                                                    : | 21-CR-151-CKK |
| | |
| BARTON SHIVELY                           : | |

**DEFENDANT'S THIRD SUPPLEMENT TO POSITION WITH RESPECT TO SENTENCING**

Mr. Barton Shively, through counsel, respectfully files this Third Supplement to his Memorandum in Aid of Sentencing. This Supplement both responds to the new information from DOC that is addressed in the final PSR and provides case citations and discussion to support his recommended sentence of 27 months to avoid unwarranted sentencing disparities with other sentences of persons convicted of similar offenses as Mr. Shively.

1. Response to Updated, Final Presentence Report

Mr. Shively has been detained at CTF since May 2022 – coming up on a year. Mr. Shively has had one disciplinary event during that time. Specifically, on September 5, 2022, the PSR writes that "while officers were trying to subdue and restrain an unruly inmate, the defendant and two other individuals picked up burgundy chairs and assumed a throwing stance and were deemed to be acting in a threatening manner toward the officers." PSR ¶ 15a. Mr. Shively was initially charged with threatening conduct, lack of cooperation, and inciting a riot. *Id*. At his hearing, the Adjustment Board found him not guilty of inciting a riot and

1

found him guilty of threatening conduct and lack of cooperation. *Id*. Mr. Shively did not have counsel at the Adjustment Board hearing.

First, it is notable that Mr. Shively was found not guilty of inciting a riot. That phrase is inflammatory – particularly for someone whose criminal offenses arise from the midst of what is viewed as a riot. When the incident first came to light by way of the Court's email, the DOC records did not include records that showed the acquittal of that charge and DOC did not tell the Court of that acquittal. Those records were only generated as part of the DOC records provided to Probation *after defense counsel* requested that the Adjustment Board findings that would reflect the acquittal were disclosed to give to the Court. The acquittal certainly puts a different light on the incident. Mr. Shively did not incite a riot.

Second, it is also notable that Mr. Shively is not charged with assault or assaultive conduct, which counsel and likely the Court have seen as charges levied against other incarcerated defendants in the past. The charge was threatening conduct, to which counsel wishes to place some context. In doing so, counsel and Mr. Shively do not excuse the conduct. Records reviewed by defense counsel reflect that animus had generated over time between that particular officer, here identified by the initials "C.L.," and the residents in the unit. On the particular day, Officer C.L. entered the unit, which was being managed without problem or incident by other officers, and peremptorily directed all residents present in the common area to enter their cells. These residents included Mr. Shively. One resident, R.M., was walking to get his medication when told to return to his cell. R.M. became "unruly" after being told to divert from his medicine and to enter his cell. A verbal and then physical encounter arose

2

between R.M. and Officer C.L., which was written up by the officers as their acting to "subdue and restrain" R.M. Mr. Shively had been unable to return to his cell, because his door was locked. As the encounter turned physical, it appeared to Mr. Shively and to other unit residents that officers were assaulting R.M. Rather than fully minding his own business as he recognizes that he should have, Mr. Shively initiating felt the need to assist resident R.M. And, in doing so, he responded to his observations inappropriately.

Counsel has viewed photographs of Mr. Shively's actions. Mr. Shively did pick up a chair when outside his cell in the common area. It was a lightweight, burgundy red *plastic* chair. Mr. Shively did not hold it in a throwing motion or have a throwing stance. But he should not have picked up the plastic chair and one can understand how officers might reasonably have believed that he picked it up to throw it. He then placed the plastic chair down. He did not throw it. He did not direct or swing it any officer He did not hit any officer with it. He withdrew from his initial instinct that led him to pick it up to put it back down. Nonetheless, he never should have touched the plastic chair and his actions resulted in his receiving the threatening conduct charge.

The records reflect that Mr. Shively understood that his lack of cooperation write-up was for his not following the direction to return to his cell. His cell door was locked. He could not have returned to his cell. In any event, the failure to cooperate is a fairly common allegation of lower significance than his picking up the plastic chair.[1]

---

[1] Records make clear the historical animus between Officer C.L. and inmates on this particular unit, which is not excuse for inappropriate conduct but can help

3

Mr. Shively was in a precarious emotional state in early September. Mr. Shively found out about his cancer diagnosis only shortly before his preventive detention in May 2022. He had been told that he needed immediate chemotherapy, and it appeared that much time passed at the jail before medication efforts began. His health was a major concern, and stressor. Beyond his own health worries, the most important concern for Mr. Shively upon his detention was the care of his two dogs. His dogs mattered more to him than anything else in the world. Counsel assisted Mr. Shively in setting up a plan that was believed to take care of the dogs for him while he was away. Mr. Shively learned that the plan quickly went awry. The person who took custody of the older dog immediately put the dog to sleep, without consulting with Mr. Shively (who would not have done so). And the person who took custody of the younger dog while Mr. Shively was incarcerated immediately gifted in a permanent way the dog to a third person. The complete loss of his pets was an additional stressor. Mr. Shively had never been jailed before. He was facing stressors that he did not have the emotional capacity to handle. He reacted emotionally to seeing someone he believed was being inappropriately assaulted. He also was able to stop himself and returned the plastic chair to the floor. He was placed in administrative segregation immediately after September 5th and remained there, isolated, for an extended period of time – in addition to his formal punishment of loss of

---

explain emotions that can have aggravated the situation. R.M.'s counsel has written about the event in seeking a return to CTF from a farther detention center for R.M. in his case. Counsel has reason to believe from that briefing and from other investigation that Officer C.L. has been removed from any involvement with the unit and that, for apparently unrelated reasons, Officer C.L. may also have been discharged from DOC employment.

privileges. In the broader context of almost a years-worth of good conduct in DOC, while Mr. Shively's September 9, 2022 actions undermined his ability to obtain sentencing benefit from the Court based upon good conduct during pretrial incarceration, this single write-up equally does not serve as a basis to increase his sentence.

2. This Court Should Sentence Mr. Shively to 27 Months of Incarceration to Avoid Unwarranted Sentencing Disparities while Serving Deterrence

Counsel informs the Court of three recent 18 U.S.C.§ 111(a) sentencing events in this Court that must be considered to avoid unwarranted sentencing disparities and that support Mr. Shively's request for a downward variance to a sentence of 27 months.

*First*, earlier this week, Judge Cooper sentenced Michael Eckerman to 20 months in prison for assaulting, resisting, or impeding law enforcement officers. *See* Kansas Man Sentenced on Felony Charge For Actions During Jan. 6 Capitol Breach | USAO-DC | Department of Justice. According to the government's sentencing memo in that case, Mr. Eckerman arrived at the Capitol wearing a tactical vest and neon leather gloves. Mr. Eckerman "participated in three separate breaches of police lines," and he breached and entered the Capitol. In the second of those breaches, already inside the Capitol, Mr. Eckerman, "pushed the officer—forcibly resisting, impeding, and interfering with the officer—which, along with the actions of others in the mob, caused the officer to stumble down some steps, leaving the officer vulnerable. While that officer was on the ground, another rioter sprayed him with a fire extinguisher." *Id*. The government's sentencing memo reflects that Mr. Eckerman also spoke with media outside the

Capitol. Unlike Mr. Shively, in the days that followed, Mr. Eckerman gloated about his actions. He added, "they all must pay" and "Fuck the cops."

In contrast, Mr. Shively did not breach the Capitol and did not breach any police lines, never mind three separate ones. While Mr. Shively admitted to two assaults on officers, not one like Mr. Eckerman his actions are distinguished by the lack of any physical injury to an officer. Mr. Shively's actions did not place an officer was placed in a vulnerable position or lead to an officer's being assaulted with a deadly or dangerous object. A sentence of 27 months for Mr. Shively – seven months greater than that imposed on Mr. Eckerman – is appropriate and proportional.

*Second*, in *United States v. David Mehaffie*, 21-CR-40-TNM-7,[2] the defendant was convicted after a bench trial of two misdemeanor counts and two felony counts: Civil Disorder and Assaulting Federal Officer under 18 U.S.C. § 111(a). Mr. Mehaffie was acquitted of obstruction of justice.

The facts of Mr. Mehaffie's 111(a) assault are fairly egregious as they extended beyond an individual grabbing or touching any particular officer to leadership of a mob's assault on an array of officers in a confined space of an entrance tunnel. As put by the government, "David Mehaffie stepped up as a leader on January 6, 2021. He led the charge in bringing the mob toe-to-toe with the line of officers protecting the tunnel entrance." "Mehaffie was not only engaged in the violent effort to push through the line of officers, he chose to lead that effort." While Mr. Mehaffie did not "directly assault[] an officer with his own

---

[2] For reasons unrelated to Mr. Shively's case, counsel attended Mr. Mehaffie's sentencing hearing. References are from the government's sentencing memo in the case, except where noted.

hands, Mehaffie's leadership ensured that the mob violence was concentrated directly on the officers who had created a human barricade into the Capitol. Rather than an undisciplined and uncoordinated mass of violent individuals – which would have been difficult enough for law enforcement to address – Mehaffie's leadership converted that undisciplined mass into a coordinated weapon directed against the officers. Every blow landed, every weapon used against officers, every push, and every strike was made more effective because of David Mehaffie's direction." "On several occasions during that period, rioters in the tunnel combined their collective bodyweight and coordinated their efforts by repeatedly pushing as a group against the police in an effort to force their way through the line while collectively shouting '"Heave ho!"'

For the two felonies, after a trial in which the Court found Mr. Mehaffie had "shaded [his] testimony to be more favorable to [his] case than the facts allowed," Judge McFadden sentenced Mr. Mehaffie to 14 months in prison. Docket Entry, 21-CR-40 (Feb. 24, 2023). Mr. Shively is also convicted of two felonies. He did not put the Court and the government to the time and expense of a trial, did not "shade" his testimony under oath, and, from the very first interview with the FBI, admitted his assaultive acts. Indeed, the *only* evidence of one of the assaults that Mr. Shively pleaded guilty to is his own statement to the FBI. There is no video and witness evidence as to that interaction. Mr. Shively was no leader; his interactions with police officers were singular, unique events. A sentence of 27 months is almost double that of Mr. Mehaffie's sentence; a sentence greater than that is disproportionate.

*Finally*, in *United States v. David Judd*, 21-CR-40-TNM-7,[3] the defendant pleaded guilty to one count of assault of a law enforcement officer and one count of obstruction of justice. As put by the government, Mr. Judd was part of the coordinating pushing against police officers in the tunnel. He passed three ballistic shields and a crutch to be used as weapons. He directed others in their assault on officers. Mr. Judd admitted lighting and throwing an object that appeared to be a firecracker at the group of police officers in the tunnel. As put by the government, "When pushing did not work, Judd lit a firecracker and threw it at the police line – landing near at least ten police officers." Mr. Judd was part of an assault for about 90 minutes, and the government reported that video evidence showed that he was one of the last people to leave the area.

The Deputy Chief of the Counterterrorism Section of the National Security Division sat at counsel table at Mr. Judd's sentencing hearing. Tr. at 2.[4] The government sought the domestic terrorism enhancement for Mr. Judd. The government stated at his sentencing hearing that Mr. Judd was not only at the top level of responsibility for the multiple defendants at the tunnel but that he was among the very worst defendants on all the January 6 defendants who had thus far been prosecuted. Specifically, the government argued, "there are few actions that could really be as aggravating as this when you have [Mr. Judd] took it upon himself to light a firework, a potentially explosive firework and throw it into a tunnel filled with police officers. And if this isn't some of the most

---

[3] Counsel represented Mr. Judd in that case and at the sentencing hearing. References are from the government's sentencing memo in the case, except where noted.
[4] The facts in this paragraph come from the transcript of Mr. Judd's sentencing hearing.

8

aggravating conduct that we've seen on January 6th, well, I would submit that it is." *Id*. at 16-17. "[H]is conduct is so far different than a rioter who has a singular officer assault, right? His conduct was aimed at everyone." *Id*. at 19. "[H]e put the lives of a large group of people at risk." *Id*. "This was not a singular attack. This was an attack on everyone." *Id*. at 22. While the apparent firework did not detonate, the government noted that "the tunnel was really the epicenter of a lot of violence on January 6th…. The injuries that were caused at the tunnel were really can't be understated. We have numerous, dozens of officers who were physically injured." *Id*. at 49-51. The government concluded that Mr. Judd's conduct exhibited "a reckless disregard at best for the lives of the law enforcement officers inside, and his stated intent was to overcome the process to certify our next president" – culpability "at an all time high." *Id*. at 52. Indeed, when asked by the Court how the government compared Mr. Judd to other January 6 defendants, the government said that he "is at the high end of them." *Id*. at 53.

Barton Shively should not receive the same sentence as David Judd. It is clear that the government and the Court must concluded that Mr. Shively's conduct is far less severe than that of David Judd. He did not use a weapon, never mind a potential explosive device. Mr. Judd lit and threw a dangerous weapon at police officers. As the government's sentencing memo showed by highlighting the serious injuries caused by the detonation of a firecracker thrown by a different defendant on January 6, the throwing of a firecracker would risk serious harm. Mr. Judd was also convicted of obstruction of justice, in seeking to prevent the Certification process and the peaceful transfer of power – with the Court's

9

ultimately using the obstruction conviction as the more serious charge in calculating the guidelines. After concluding that Mr. Judd's guidelines were 37-46 months Judge McFadden varied downward from the guidelines to impose a sentence of 32 months. Docket Entry, 21-CR-40 (Feb. 27, 2023). Even setting aside all the other comparator cases, it is proportionate for Mr. Shively to be sentenced to at least half a year less in prison than Mr. Judd if not an even shorter sentence. Without doubt, Mr. Shively should not be sentenced to the same length of incarceration as Mr. Judd's 32 months.

In his sentencing memo and supplements, Mr. Shively has presented the Court with a number of comparative sentencing outcomes. Overall, Mr. Shively has attempted to be realistic in his sentencing recommendation. He has not advocated for time-served or probation. He recognizes that he will receive a prison sentence. A prison sentence of 27 months that varies slightly downward from his sentencing guidelines is a fair sentence in light of all circumstances.

## CONCLUSION

For all the reasons provided in Mr. Shively's sentencing memorandum, this supplement, that shall be presented at his hearing, and for those just and fair identified by this Court, in imposing a sentence that is sufficient but no greater than necessary, the Court should sentence Mr. Shively to 27 months of incarceration, followed by a term of supervised release.

Respectfully submitted,

BARTON SHIVELY
By Counsel

/s/
Edward J. Ungvarsky, Esquire
DC Bar No. 45934
Ungvarsky Law, P.L.L.C.
421 King Street, Suite 505
Alexandria, Virginia 22314
Desk: 571/207-9710
Cell: 202/409-2084
Fax: 571/777-9933
ed@ungvarskylaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of March 2023, I electronically filed a true copy of the foregoing motion with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all parties.

/s/
Edward J. Ungvarsky, Esquire
DC Bar No. 45934
Ungvarsky Law, P.L.L.C.
421 King Street, Suite 505
Alexandria, Virginia 22314
Desk: 571/207-9710
Cell: 202/409-2084
Fax: 571/777-9933
ed@ungvarskylaw.com
